UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

JON LEIGH SHOULDERS

VERSUS

BATON ROUGE POLICE
DEPARTMENT, ET AL.

CIVIL ACTION

NO. 09-494-JJB-SCR

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the court on Defendants City of Baton Rouge; Lorenzo C. Coleman; Charles Blacknell, Jr.; Kevin C. Heinz; Michael E. Burkett; and Seth D. Sinclair's ("Defendants") Motion (doc. 37) for Summary Judgment. Plaintiff Jon Leigh Shoulders ("Shoulders") filed a Memorandum (doc. 41) in Opposition, to which the Defendants have filed a Reply (doc. 44). There is no need for oral argument. Jurisdiction is based upon 28 U.S.C. § 1331. For the reasons stated herein, the Court **GRANTS IN PART AND DENIES IN PART** the Defendants' Motion (doc. 37) for Summary Judgment.

**Background**

On July 29, 2008, during a concert at the Baton Rouge River Center, Defendants Lorenzo Coleman ("Coleman") and Charles Blacknell, Jr. observed Plaintiff Shoulders smoking marijuana. The officers removed the Plaintiff from the concert and escorted him to the parking lot. On the way out of the concert, the Plaintiff Defendant Coleman told Plaintiff to stand by the unmarked police narcotics vehicle and to keep his hands on the car while Defendant Coleman issued the summons. At one point, Plaintiff removed his hands from the vehicle. Defendant Coleman told Plaintiff to put his hands back on the car, and the Plaintiff complied with the instructions. While Defendant Coleman was writing the summons, it is alleged that the Plaintiff told him "I will see your mother f****** a** in court" and "I will deal with you're [sic] a**."

1

Before Defendant Coleman finished writing the summons, he allegedly saw out of his peripheral vision that the Plaintiff was moving toward him with his fists clenched. It is alleged that upon seeing this movement, Defendant Coleman struck Plaintiff with a control technique known as the "Brachial Plexus Stun Maneuver." The maneuver involved Defendant Coleman striking the back of Plaintiff's neck—the brachial plexus origin—with the edge of his right hand. The impact caused the Plaintiff to lose consciousness and fall to the pavement. As a result of his fall, Plaintiff hit his head on the pavement, resulting in skull fractures, brain bleeding, and permanent damage to the frontal lobe of the brain.

Subsequently, Plaintiff filed suit against multiple defendants, including the City of Baton Rouge and Officer Lorenzo Coleman. Plaintiff asserts claims for damages under 42 U.S.C. § 1983 and Louisiana tort law. On August 30, 2013, Defendants filed a Motion (doc. 37) for Summary Judgment, arguing for the applicability of the doctrine of "qualified immunity." However, in his Opposition, Plaintiff contends that qualified immunity is inapplicable as to Defendant Coleman, because there are genuine issues of material fact as to the reasonableness of his actions. It must be emphasized that in his Opposition, Plaintiff voluntarily dismissed "the action against Officers [Kevin C.] Heinz, [Seth D.] Sinclair, [Charles] Blacknell, and [Michael E.] Burkett." (Doc. 41, p. 1 n.1). Accordingly, these defendants are dismissed from the action. The following summary judgment analysis concerns only the claim of qualified immunity by Defendant Lorenzo Coleman.

**Analysis**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. Rule Civ. P. 56(a). When the non-moving party has the burden of proof at trial, the movant need only

demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party can do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case. *Id.* A party must support its summary judgment position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. Rule Civ. P. 56(c)(1).

Although the Court considers evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden. *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139–40 (5th Cir. 1996). Similarly, "[u]nsworn pleadings, memoranda or the like are not . . . competent summary judgment evidence." *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991).

In the Motion for Summary Judgment, Defendant Coleman asserts that he is entitled to qualified immunity for his actions. "The doctrine of qualified immunity serves to shield a government official from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of then clearly established law." *Thompson v. Upshur County*, 245 F.3d 447, 456 (5th Cir. 2001) (citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). "The Supreme Court has characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Courts must apply "a two-step analysis to determine whether a defendant is entitled to summary judgment on the basis of qualified immunity." *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007). First, the court must "determine whether, viewing the summary

Case 3:09-cv-00494-JJB-SCR   Document 45   10/23/13   Page 3 of 10

judgment evidence in the light most favorable to the plaintiff, the defendant violated the plaintiff's constitutional rights." *Id.* If so, the Court next considers "whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Id.* at 411. "To make this determination, the court applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions." *Id.* "Because qualified immunity protects officers who 'reasonably but mistakenly' violate a plaintiff's constitutional rights, the deputies are entitled to qualified immunity if a reasonable person in their position 'would have believed that [their] conduct conformed to the constitutional standard in light of the information available to [them] and the clearly established law.'" *Id.* at 415 (quoting *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000)). The court "must evaluate an officer's use of force 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Poole v. City of Shreveport*, 691 F.3d 624, 627−28 (5th Cir. 2012) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

"In the summary judgment context, a government official need only plead qualified immunity, which then shifts the burden to the plaintiff." *Gates v. Texas Dept. of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008) (citing *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005)). "The plaintiff must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Id.*

Turning to the first prong of the qualified-immunity analysis, individuals have a "Fourth Amendment right to be free from excessive force during a seizure." *See Poole*, 691 F.3d at 627−28. *See also Deville v. Marcantel*, 567 F.3d 156, 169 (5th Cir. 2009) (per curiam). In the

4

present matter, the Plaintiff was severely injured due to the allegedly excessive force utilized by Defendant Coleman. Therefore, the primary issue in the present matter is whether Defendant Coleman's utilization of the "Brachial Plexus Stun Maneuver" in response to the Plaintiff's actions was "objectively unreasonable in light of clearly established law at the time of the conduct in question." *Freeman*, 483 F.3d. at 411.

Baton Rouge Police Department, General Order No. 135, which covers the police department's use of force policy, provides that "[i]t is the policy of the department that the use of force will be limited to situations involving resistance to arrest, defense against physical assault or to perform official duties, and that only force which is reasonable and necessary may be used to achieve these objectives." (Doc. 41-5, p. 1). In describing the level of officer control to be utilized, the policy states that "[t]he level of control used by the officer will be based upon the level of subject resistance encountered, and the amount of force necessary to overcome that resistance." (Doc. 41-5, p. 2). Thus, the official policy is for officers to best match their level of control with the level of subject resistance. Nonetheless, "[i]f you feel deemed necessary and a suspect is attacking you, you are allowed to go one level above what is being displayed to you." (Doc. 41-2, p. 2). The levels of subject resistance under the use-of-force policy, in order of increasing escalation, are: (1) psychological intimidation, (2) verbal non-compliance, (3) passive resistance, (4) defensive resistance, (5) active aggression, and (6) deadly force assault. (Doc. 41-5, p. 1−2). Alternatively, the seven levels of officer control, in order of increasing escalation, are: (1) officer presence, (2) verbal direction, (3) aerosol subject restraint, (4) soft empty hand control, (5) hard empty hand control, (6) TASER, and (7) intermediate weapon. (Doc. 41-5, p. 2−3).

5

In his "Use of Force Report" describing the relevant incident, Officer Coleman indicated that the Plaintiff first engaged in "verbal non-compliance,"[1] then in "passive resistance,"[2] and finally in "psychological intimidation."[3] (Doc. 41-4). In response, Officer Coleman indicated that his responsive "level of control" proceeded in the following chronological order: (1) "officer presence," (2) "verbal direction," and (3) "Hard Empty Hand (Palm Head Brachial Stun)."[4] (Doc. 41-4). Therefore, the utilization of the "hard empty hand" control would have been in response to "psychological intimidation," which is the lowest level of resistance under the police department's use of force policy.

The arrest report in this matter provides further details as to the incident. According to the report, after seeing the Plaintiff smoking marijuana, Defendant Coleman and Officer Blacknell "advised the arrestee to get up and that he was under arrest." (Doc. 41-3, p. 4). Nevertheless, the officers "had to pull the arrestee (Shoulders) out of his seat by his shirt due to him passively resisting." (Doc. 41-3, p. 4). In the process of removing him from the arena, the Plaintiff dropped "a clear baggie containing .7 grams of [m]arijuana on the ground." (Doc. 41-3, p. 5). After removing Plaintiff from the River Center and while the Defendant Coleman wrote the summons, the Plaintiff told him "I will see your mother f****** a** in court" and "I will deal with you're [sic] a**." (Doc. 41-3, p. 5). Defendant Coleman goes on to write in his report that:

> As I turned to finish writing the misdemeanor summons the arrestee (Shoulders) took both of his hands off my unit. The arrestee (Shoulders) stepped up to me with his fist clench [sic] and I felt that the arrestee (Shoulders) was about to strike me. I quickly delivered a Palm Heal Brachial Stun to the Brachial Plexus Origin

---

[1] "Verbal non-compliance" is "[t]hreatening non-verbal body language such as clenching of the fists, assuming a fighting stance and increased muscle tone indicating readiness to fight." (Doc. 41-5, p. 1).
[2] "Passive resistance" is "[p]assive physical actions such as going limp, refusing to place hands in a position to be hand-cuffed or what is commonly considered to be demonstrator resistance." (Doc. 41-5, p. 2).
[3] "Psychological intimidation" is "[t]hreatening non-verbal body language such as clenching of the fists, assuming a fighting stance and increased muscle tone indicating readiness to fight." (Doc. 41-5, p. 1).
[4] According to Baton Rouge Police Department, General Order No. 135, "Hard Empty Hand Control" is described as "[e]mpty hand control techniques which have a probability of causing bruising or minor lacerations to the skin (i.e. respiratory stuns and mental stuns)." (Doc. 41-5, p. 2).

which is taught in the PPCT Management System (Defensive Tactics). I used the Fluid Shock Wave Principle and it caused the arrestee (Shoulders) to loose [sic] consciousness.

(Doc. 41-3, p. 5). Accordingly, Defendant Coleman utilized the brachial stun maneuver after the Plaintiff "stepped up" to him with his "fist clench[ed]." (Doc. 41-3, p. 5).

Furthermore, in his deposition, Defendant Coleman provides the following: "As I was finishing up the summons, I could see in my peripheral he [Plaintiff] took his hands off the top of the car and that's when I turned and I looked and he came at me with his fists clenched." (Doc. 37-1, p. 10). Later, in that same deposition, Defendant Coleman states the following:

> Q. Both fists?
> A. Both fists.
> …
> Q. He came at you like the boxer, his hand up in front of him?
> A. He was ready to fight.
> Q. Did he move at all?
> A. Yes, sir. He was moving towards me.
> Q. To do what, beat you up?
> A. I don't know—I wasn't going to stand there and find out and let him beat me up and find out. So from what I took and the way I felt, I felt that he was going to attack me because I see no other reason for him to come at me with his fists clenched.
> Q. Now, when this is happening, his fists are up at his chest level?
> A. If I recall correctly, it was.
> Q. And they are both clenched, both fists are clenched?
> A. Yes, sir.

(Doc. 37-1, p. 10−11). Later in his deposition, Defendant Coleman notes that the Plaintiff never actually took a swing at him prior to administering the brachial stun maneuver. (Doc. 37-1, p. 15). Nevertheless, Defendant Coleman goes on to state:

> A. And I wasn't going to take that chance to see—give him a chance to hit me because that may be the only lick that would be passed. So I deemed it necessary to deliver the brachial stun due to his actions and attempting to attack me with his fists clenched.
> Q. Do you think it was quicker for you to give him a whack than it would have been to shout at him to tell him to stop, get back where you were—
> A. At the time—

7

| | | |
|---|---|---|
| Q. | —stop approaching me? | |
| A. | It happened so quick and even if I had said stop approaching me, that's still not going to stop him from hitting me. | |
| Q. | How do you know? | |
| A. | I wasn't going to take that chance and let him hit me and find out. | |
| Q. | You didn't think you would be capable of defending yourself from a punch from mighty Mr. Shoulders? | |
| A. | The thing is they have a lot of mixed martial artists. I can't look at Mr. Shoulders and say he can't fight or if he can. That's the unknown. I'm on duty to protect myself and that's what I'm supposed to do. He could have been a black belt in karate or anything. I don't know that. | |

(Doc. 37-1, p. 21−22).

The United States Supreme Court in *Graham* emphasized that the reasonableness evaluation regarding a particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." 490 U.S. at 396. The "reasonableness" test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* "With respect to a claim of excessive force, the same standard of reasonableness . . . applies: 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Id.* (citations omitted) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396−97.

Focusing on the present matter and looking at the evidence in the light most favorable to the Plaintiff, the court finds that there is a genuine issue of material fact as to the actions of Plaintiff that led to the relevant incident and to the reasonableness of Defendant Coleman's

8

conduct, such that granting summary judgment on the issue of qualified immunity would be improper. Of primary importance, on the "Use of Force Report," Defendant Coleman indicated that the Plaintiff first engaged in "verbal non-compliance," then in "passive resistance," and finally in "psychological intimidation." (Doc. 41-4). In response, Defendant Coleman's "level of control" proceeded in the following chronological order: (1) "officer presence," (2) "verbal direction," and (3) "Hard Empty Hand (Palm Head Brachial Stun)." (Doc. 41-4). Accordingly, the utilization of the "hard empty hand" level of control was in response to "psychological intimidation," which is the lowest level of resistance under the police department's use of force policy and involves merely "threatening non-verbal body language." Nevertheless, in utilizing the brachial stun maneuver, Defendant Coleman responded to the lowest level of resistance with the fifth-highest level of control. (*See* Doc. 41-5, p. 1−3). Based on this report, it appears that Defendant Coleman used an extremely strong level of force to combat the least-serious level of resistance. While the deposition of Defendant Coleman and the arrest report provide a different view regarding Plaintiff's actions, the "Use of Force Report" highlights the stark disproportion in the level of response by Defendant as compared to the level of resistance by Plaintiff.

Furthermore, the arrest report only indicates that the Plaintiff "stepped up" to Defendant Coleman with his "fist clench[ed]." (Doc. 41-3, p. 5). There is no indication in the report as to the specific actions that Plaintiff took; only the use of the ambiguous term "stepped up." Defendant Coleman testified in his deposition that the Plaintiff never struck him nor attempted to wrestle him throughout the relevant encounter. (Doc. 44-1, p. 4). Moreover, the Plaintiff never even swung his fist at the Defendant. (Doc. 41-2, p. 5). As an additional point, Defendant Coleman testified in his deposition that despite the Plaintiff's "mouthing off," he did not feel a threat, and therefore, he did not put the Plaintiff in handcuffs throughout the duration of writing

9

the summons. (Doc. 37-1, p. 15). Looking at all of this evidence in the light most favorable to the Plaintiff, this Court finds that there is a genuine issue of material fact as to the Plaintiff's actions and the threat the Plaintiff presented to Defendant Coleman, and thus, whether the use of force by Defendant Coleman was reasonable under the circumstances. Accordingly, granting summary judgment for Defendant Coleman on the issue of qualified immunity would be improper under the present circumstances.

## Conclusion

Therefore, Defendants' Motion (doc. 37) for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**. As a result of the Plaintiff's voluntary dismissal in his Opposition (doc. 41, p. 1 n.1), all claims against (1) Charles Blacknell, Jr.; (2) Kevin C. Heinz; (3) Michael E. Burkett; and (4) Seth D. Sinclair are **DISMISSED**, and these defendants are **DISMISSED** from this action.

Signed in Baton Rouge, Louisiana, on October 22, 2013.

_____
**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**